U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 07-06119

ORDER ON UNITED STATES TRUSTEE'S MOTION TO DISMISS

The relief set forth on the following pages, for a total of 14 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**05/16/2008**



US Bankruptcy Court Judge
District of South Carolina

Entered: 05/16/2008

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Gregory Alan Wolf,<br><br>Debtor(s). | C/A No. 07-06119-DD<br><br>Chapter 7<br><br>**ORDER ON UNITED STATES TRUSTEE'S MOTION TO DISMISS PURSUANT TO 11 U.S.C. 707(b)** |

THIS MATTER is before the Court on the United States Trustee's ("UST") Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1) Based on the Totality of the Circumstances Under 11 U.S.C. § 707(b)(3)[1] ("Motion"). An evidentiary hearing was held on the Motion on April 29, 2008. Gregory Alan Wolf ("Debtor") and the UST appeared at the hearing by and through counsel. This Court has jurisdiction pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 7052 and 9014, the Court makes the following Findings of Fact and Conclusions of law[2]

*Facts*

1. Debtor, an individual, filed a petition under chapter 7 of the Bankruptcy Code on November 5, 2007.

2. Debtor is a veterinarian who specializes in the care of horses, and ran his own business providing these services while a resident of Florida. Debtor closed his practice and moved to Aiken, South Carolina on or about January 1, 2007.

---

[1] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 et. seq., will be by section number only.

[2] To the extent any Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

2

Debtor is currently employed as an equine veterinarian by Southern Equine Services in Aiken.

3. Debtor's gross monthly wages are $5,833.34 with payroll deductions of $1,541.60 leaving him an average net monthly income of $4,291.74.

4. Debtor's spouse is a partner/manager with Sideline Barn Book. She did not join in the petition. Debtor's spouse previously filed a chapter 7 bankruptcy petition, and received a discharge, in Florida. She has a monthly gross income of $3,300.00 but lists no payroll deductions on Schedule I and no amount for income taxes on Schedule J. Debtor's income combined with that of his spouse gives the household a combined average monthly income of $7,591.74.

5. Debtor has two children, ages eight and six, living in the household along with his spouse.

6. Debtor's Schedule J reports the following expenses:

| Expense | Amount |
|---|---|
| Home Mortgage (tax and ins. Included) | $4,800.00 |
| Electricity and heating fuel | $ 500.00 |
| Water and sewer | $ 25.00 |
| Telephone | $ 200.00 |
| Other: Cable | $ 125.00 |
| Home maintenance | $ 200.00 |
| Food | $1,800.00 |
| Clothing | $ 150.00 |
| Laundry and dry cleaning | $ 75.00 |
| Medical and dental expenses | $ 100.00 |
| Transportation | $ 600.00 |
| Recreation | $ 300.00 |
| Charitable contributions | $ 10.00 |
| Life Insurance | $ 100.00 |
| Health Insurance | $ 625.00 |
| Auto Insurance | $ 250.00 |
| Taxes (not deducted form wages) | $ 0.00 |
| Installment Payments (Auto) | $1,300.00 |
| Other: Child Care | $ 100.00 |
| Total Average Monthly expenses | $11,260.00 |

| | | |
|---|---|---:|
| Average monthly income from Schedule I | | $7,591.74 |
| Average monthly expenses from above | | $11,260.00 |
| Monthly net income | | ($3,668.26) |

7. Debtor's annualized household gross income is $109,600.08. The applicable median income for a household size of four in South Carolina is $59,663.00. Because the annualized current monthly income exceeds the applicable median income for Debtor's household Debtor completed all of Form B22A.

8. In Part V of Form 22A Debtor lists the following deductions:

| | **Subpart A: Deductions under Standards of the Internal Revenue Service (IRS)** | |
|---|---|---:|
| Line | | |
| 19 | National Standards: food, clothing, household supplies, personal care, and miscellaneous. | $1,546.00 |
| 20A | Local Standards: housing and utilities; non-mortgage expenses. | $444.00 |
| 22 | Local Standards: transportation; vehicle operation/public transportation expense. | $343.00 |
| 23 | Local Standards: transportation ownership/lease expense; Vehicle 1. | $81.00 |
| 24 | Local Standards: transportation ownership/lease expense; Vehicle 2. | $72.00 |
| 25 | Other Necessary Expenses: taxes. | $1,541.60 |
| 27 | Other Necessary Expenses: life insurance. | $100.00 |
| 30 | Other Necessary Expenses: childcare. | $100.00 |
| 31 | Other Necessary Expenses: health care. | $100.00 |
| 32 | Other Necessary Expenses: telecommunication services. | $125.00 |
| 33 | Total Expenses Allowed under IRS Standards. | $4,452.60 |
| | **Subpart B: Additional Expense Deductions under § 707(b)** | |
| 34 | Health Insurance. | $625.00 |
| 37 | Home energy costs. | $281.00 |
| 39 | Additional food and clothing expense. | $479.00 |
| 40 | Continued charitable contributions. | $10.00 |
| 41 | Total Additional Expense Deductions under § 707(b) | $1,395.00 |
| | **Subpart C: Deductions for Debt Payment** | |
| 42 | Future payments on secured claims.<br>a. Dodge -    $390.00<br>b. Ford    -    $260.00<br>c. Residence - $4,800.00 | |
| | | Total $5,450.00 |

| 44 | Payments on priority claims. | $10.77 |
|---|---|---|
| 46 | Total Deductions for Debt Payment. | $5,460.77 |
| **Subpart D: Total Deductions Allowed under § 707(b)(2)** | | |
| 47 | Total of all deductions allowed under § 707(b)(2) | $11,308.37 |

9. Part VI of the Debtor's Form B22A shows that Debtor's total allowable deductions exceed his monthly household income by $2,127.03. The UST did not object to Debtor's calculation of the means test. A presumption of abuse pursuant to § 707(b)(2) does not arise.

10. Debtor's secured debt totals $1,415,925.63.

11. Debtor owns a house in Florida which was his residence before his move to South Carolina. The secured debt on that property includes a first mortgage to U.S. Bank National Association in the amount of $555,925.84, a second mortgage to Scott Stevenson totaling $70,000, a lien for homeowner's association fees for $693.00, and a judgment lien in the amount of $74,630.40.

12. Debtor states on Schedule D that this property is owned jointly with his spouse and he lists the value of his ½ interest at $350,000.

13. Debtor testified that he put the Florida house up for sale at some point in 2005. He has had no offers for this property. Debtor's statement of intention indicates he will surrender the Florida property.

14. Debtor also owns a house on 5 acres of land in Aiken, South Carolina which is his current residence. He indicates the value for this property is $725,000.00 with his ½ interest valued at $362,500.00. Debtor's only secured debt associated with this property is a first mortgage in the amount of $653,000.00. Debtor states that he moved into the residence on or about January 1, 2007. This property has been for

sale since around April or May of 2007 for an asking price of $810,000.00. Debtor testified that the house has been "shown" about 20-30 times but he has had no offers for purchase. Some 55 pictures of the house, guest house, horse barn and the 5 acre tract were introduced into evidence. The house is fifteen or so years old and is in need of some maintenance. The house and other buildings are well appointed. While some portions of the buildings remain "unfinished", the overall property and its value are well above average for South Carolina.

15. Debtor owns two automobiles, a 2004 Ford Expedition driven by his spouse and a 2005 Dodge Ram that is the vehicle he uses for his employment. The secured claim for the Expedition is to Ford Motor Credit in the amount of $25,424.74 and the vehicle has a value of $20,000.00. The Dodge Ram is listed as having a value of $26,000 with a secured claim against it to Citizen's Auto Finance in the amount of $29,251.65.[3] Debtor indicates on his statement of intention that he will reaffirm the debt on each of the vehicles.

16. Debtor's last secured Debt is for a timeshare in Las Vegas, Nevada. Debtor's Schedule D states that the property has a secured claim for $7,000.00 with his ½ interest valued at $3,750.00. His statement of intention indicates he will surrender his interest.

17. Debtor lists $646.30 for unsecured priority claims for unpaid 2006 real estate taxes on his Florida property.

---

[3] Debtor testified that the secured claim and value of the Dodge Ram includes a "mobile clinic" which is attached to the truck. Debtor explained that the mobile clinic is an insert that is installed in the truck bed that holds his medical equipment that is necessary to perform his work. Debtor stated that when he purchased the truck the dealership installed the mobile clinic for him and allowed him to finance it in addition to the purchase price of the truck. The mobile clinic is not reflected as an asset in the schedules.

6

18. Debtor has $170,776.01 in unsecured non-priority debts. Approximately $132,127.85 of this total is described as business debt.

19. Either Debtor or his spouse owns a horse. In this case Debtor claims the horse is owned by his wife. In the Florida case the spouse claimed the Debtor owned the horse.

20. The Debtor and the UST stipulate that the Debtor's credit obligations are primarily consumer debt.

## CONCLUSIONS OF LAW

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (codified in scattered sections of Title 11 of the U.S. Code) ("2005 Amendments") made significant changes to the Bankruptcy Code. Among the more significant of these changes was the revision of § 707(b). A chapter 7 case filed by an individual debtor may be dismissed, or with the debtor's consent converted, if relief would be an abuse of the provisions of chapter 7 of the Bankruptcy Code.

Abuse is presumed, for above median income debtors, if the application of a statutory "means test" yields available funds for payment to creditors of a specified dividend. § 707(b)(2)(A). A presumption of abuse may be rebutted. § 707(b)(2)(B). Abuse may also be shown by proof of the bad faith filing of the bankruptcy petition or by demonstration of abuse in light of the totality of the circumstances of the debtor's financial situation. § 707(b)(3). In this case the UST does not argue a presumption of abuse arising from the application of the means test[4]. Rather, the UST argues abuse based on the totality of the circumstances and bad faith in filing the bankruptcy petition. In relevant portion the Bankruptcy Code provides:

---

[4] Debtors large secured debt payments account for his "passing" the means test.

7

>   (b)(1)After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)). . . .
>
>   **(3)** In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider--
>   **(A)** whether the debtor filed the petition in bad faith; or
>   **(B)** the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

§ 707(b)(1), (3).

Debtor contends that the totality of the circumstances test in § 707(b)(3)(B) incorporates the pre-2005 amendment cases in this judicial circuit which begin with and follow *Green v. Staples (In re Green)*, 934 F.2d 568 (4th Cir. 1991).  Specifically, Debtor argues that the ability to pay one's debts, while a factor in weighing the circumstances surrounding a debtor's financial situation, is not sufficient to alone constitute abuse.  The UST argues that the totality of circumstances test does not carry *Green* into the statute *in toto*, but that the amendments to § 707(b) and other sections of the Bankruptcy Code remove the underpinnings of *Green.*  Thus, the UST argues, the ability to pay all or some portion of one's debts is abuse of chapter 7.

The amendments to § 707(b)(3) incorporate the judicial constructs of bad faith and totality of the circumstances.  The pre-amendment case law applying these concepts

8

should, therefore, be helpful in analyzing claimed abuse by a debtor. Prior to the 2005 amendments to the Bankruptcy Code the Fourth Circuit and others employed a totality of the circumstances test to determine substantial abuse. The varying tests for substantial abuse, as the tests relate to the "ability to pay" component, can be summarized as follows: the Ninth Circuit[5] determination that ability to pay <u>is</u> alone sufficient, the First[6], Sixth[7] and Eight[8] Circuits determination that ability to pay alone <u>can be</u> sufficient, and the Fourth[9] Circuit determination that ability to pay alone <u>cannot be</u> sufficient. *In re Henebury*, 361 B.R. 595, 605 (Bankr. S.D. Fla. 2007).

The tests employed by these courts shared other common elements. The test in our Circuit was to the effect that:

> [T]he . . . determination must be made on a case by case basis, in light of the totality of the circumstances. . . . The 'totality of the circumstances approach involves an evaluation of factors such as the following: (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment; (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay; (3) Whether the debtor's proposed family budget is excessive or unreasonable; (4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and (5) Whether the petition was filed in good faith(citations omitted).

*Green* at 572. Additionally, "the debtor's ability to repay is the *primary* factor to be considered (emphasis in the original)." *Id*.

The *Green* court explained its rejection of a stand alone ability to repay test, stating:

---

[5] *In re Kelley*, 841 F.2d 908 (9th Cir. 1988).
[6] *In re Lamanna*, 153 F.3d 1 (1st Cir. 1998).
[7] *In re Krohn*, 886 F.2d 123 (6th Cir. 1989).
[8] *In re Harris*, 960 F.2d 74 (8th Cir. 1992).
[9] *In Re Green*, Supra.

> Exploring these factors, as well as the relation of the debtor's future income to his future necessary expenses, allows the court to determine more accurately whether the particular debtor's case exemplifies the real concern behind Section 707(b): abuse of the bankruptcy process by a debtor seeking to take unfair advantage of his creditors. The debtor's relative solvency may raise an inference that such a situation exists. Nevertheless, in light of the statutory presumption that a debtor's Chapter 7 petition should be granted, solvency alone is not a sufficient basis for a finding that the debtor has in fact substantially abused the provisions of Chapter 7.

*Id*.

The UST is correct that much of the underpinning of *Green* is removed by the 2005 amendments to the Bankruptcy Code. The presumption in favor of the debtor is gone. Congress added an "insolvency" restriction on a debtor's choice of chapter in the form of the means test. Finally, the standard for dismissal is no longer "substantial abuse" but "abuse." Nevertheless, abuse is found, if at all, based on either bad faith or the totality of the circumstances. Each standard requires a determination of and the balancing of multiple factors and stands in contrast to a *per se* rule[10]. The tipping point may well have changed and ability to repay one's debts may be sufficient to constitute abuse. The evidence presented in this case, however, does not require the determination of that more narrow issue.

The *Green* factors

Debtor's case was not filed because of a sudden illness, calamity, disability or unemployment. Debtor and spouse remain gainfully employed, with above average incomes. While Debtor testified to depression, he is being treated and is on medication. The financial problems faced by Debtor result from his decision to close his Florida

---

[10] "The determination of good faith is necessarily fact intensive and must be conducted on a case-by-case basis. The Court should consider the totality of the circumstances. . . ." In re Thomas, 352 B.R. 751, 757 (Bankr. D. S.C. 2006).

10

veterinary practice, move to South Carolina, and buy an expensive home before selling another expensive home. This factor weighs against Debtor.

Debtor incurred consumer purchases, two homes, far in excess of his ability to repay. Debtor bought and moved into a $725,000 property in Aiken, South Carolina in January, 2007. He did so despite the fact that he had been unable to sell his $700,000 Florida home. He added a $653,000 mortgage to existing secured debt of $550,000 for real property purchases. While Debtor and his family may certainly incur an expense for adequate shelter, in light of family size, income level, location and other factors, the housing in this case is excessive. The Internal Revenue Service would allow $834 per month.[11] This expense of 5.7 times the local housing standard is too much. *See In re Kaminski*, 2008 WL 1733389, slip op. 4 (Bankr. N.D. Ohio, April 14, 2008). This Court agrees that the IRS standard is not a fixed ceiling for reasonableness but is helpful as a guidepost. This factor weighs against Debtor.

Debtor's budget for household expenses is not reasonable and is excessive. Debtor claims a food budget of $1800, cable television $125, transportation cost $600, and recreation $300. The secured credit payments for the home and vehicles total $6100, two-thirds of gross monthly income. Debtor and his spouse enjoy income significantly above the median for a South Carolina family of four[12], yet are unable to live within their means. Schedule J reports expenses of 123% of the couple's gross income before payment of any unsecured creditors. Debtor testified that he and his wife are current in payment of the household expenses. This is not possible if the expenses are accurately

---

[11] http://www.usdoj.gov/ust/eo/bapcpa/20071015/bci_data/housing_charts/irs_housing_charts_SC.htm (last viewed May 15, 2008)

[12] The median income for a Floridian family of four at the time was $65024. See http://www.usdoj.gov/ust/eo/bapcpa/20071015/bci_data/median_income_table.htm (last viewed May 15, 2008)

11

stated. The family has engaged in no effort to moderate spending or to tighten the family financial belt. This factor weighs against Debtor.

The schedules and statements filed in this bankruptcy case do not accurately reflect the Debtor's financial affairs. First, Debtor reported ownership of a 2005 Dodge Ram with a value of $26,000 at the time of the petition. He did not indicate his ownership of a mobile animal clinic added to the bed of the truck. Debtor's employer pays him $600 per month for use of the truck plus reimburses credit card charges for fuel. None of this is separately disclosed and itemized. Second, Debtor now claims not to own the horse his wife stated was his during the time of her bankruptcy case. Third, Debtor's budget for transportation cost is greatly overstated, in light of the reimbursement for fuel costs. Fourth, Debtor failed to disclose the receipt of funds from accounts receivables of his Florida veterinary practice in the six months prior to filing this case and he failed to report $15,000 received from the sale of his Florida veterinary client list. While the accounts receivable and the client list belong to a corporate entity, that entity is owned by Debtor and the funds were deposited by him in his personal account. Debtor's testimony that he paid these funds out in connection with his Florida veterinary practice and to pay mortgage debt was not credible. Debtor also did not disclose the sale of a motorcycle, at a profit of $5,000, in the year prior to filing bankruptcy. This factor weighs against Debtor.

A debtor's good faith in filing a petition, a *Green* totality of the circumstances factor, is now a separate basis for a finding of abuse. In this case the factors described in the preceding paragraph also form the basis for a finding of bad faith in the filing of the petition in this case. Debtor has not been forthcoming with information necessary to the

administration of his case. While the chapter 7 trustee has determined that there are no assets available for liquidation and payment to the creditors, disclosure of the information recited above was relevant to the determinations made here.

Lastly, with belt tightening, Debtor could repay something to his creditors. The family spending habits are out of control. This family enjoys a substantial income yet seeks "to transfer the cost of an unnecessary lifestyle to creditors." *Kornfield v. Schwartz (In re Kornfield)*, 164 F.3d 778, 784 (2nd Cir. 1999). *See also U. S. Trustee v. Harrelson*, 323 B.R. 176, 179 (W.D. Va. 2005)("paying for luxuries that are unreasonable in light of their financial situation"), *In re Adams*, 2007 WL 3091583, slip op. 5, (Bankr. D. Md. October 19, 2007)(residing in a $1.3 million house, car payments of $1,225 "and otherwise not conforming to a reasonable budget while filing a Chapter 7 bankruptcy case to support such a lavish lifestyle on the backs of creditors . . . .").

While some argue that the means test replaces consideration of the ability to repay creditors, the majority and better view is that ability to pay is an important part of the consideration of the totality of the circumstances. *See In re Zaporski*, 366 B.R. 758, 771 (Bankr. E.D. Mich. 2007), *In re Pak*, 343 B.R. 239, 241-244 (Bankr. N.D. Cal. 2006), *In re Mestemaker*, 359 B.R. 849, 853-57 (Bankr. N.D. Ohio 2007), *In re Simmons*, 357 B.R. 480, 487-89 (Bankr. N.D. Ohio 2006). We look to the totality of the circumstances of the debtor's financial situation under § 707(b)(3). The plain meaning of "financial situation" must necessarily includes the debtor's ability to pay creditors.

Granting Debtor relief under Chapter 7 would be an abuse. Each of the *Green* factors weighs against the Debtor.

*Availability of Chapter 13 Relief*

Debtor argues that he is ineligible for chapter 13 relief because of the secured debt restrictions imposed by § 109(e). Thus he claims, since he cannot convert to chapter 13, § 707(b) should not apply. At best, the consideration should be only one factor in the totality of the circumstances. *See In re Short*, 2008 WL 2020200, slip op. 2 (Bankr. D. Neb. May 8, 2008)(listing factors including "whether the debtor is eligible for relief under another Chapter."). This Court views eligibility for relief under another chapter as having either no or very minimal relevance to the proper framework for analyzing dismissal. There is no constitutional right to bankruptcy relief. *United States v. Kras*, 409 U.S. 434, 446-45 (1973). The issue is whether a debtor should receive a chapter 7 "fresh start." Where abuse is present the case should be dismissed without regard to the availability of relief under some other chapter. *In re Krohn*, 886 F.2d 123, 127 (6th Cir. 1989). Relief is reserved for the "honest but unfortunate debtor", not the abusive debtor.

Since Debtor has not consented to conversion to Chapter 13, and may not be eligible for such relief, the case is dismissed.

**AND IT IS SO ORDERED.**
Columbia, South Carolina
May 16, 2008

14